An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1122

Filed 1 July 2026

Onslow County, No. 24JA000071-660

In re: J.R.B.

Appeal by Respondent-Mother from order entered 26 August 2025 by Judge James W. Bateman, III, in Onslow County District Court. Heard in the Court of Appeals 3 June 2026.

> *Richard Penley for Petitioner-Appellee Onslow County Department of Social Services.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell Armbruster, for Guardian ad Litem.*
>
> *Office of the Parent Defender, by Parent Defender Annick Lenoir-Peek and Senior Assistant Parent Defender J. Lee Gilliam, for Respondent-Appellant Mother.*

COLLINS, Judge.

Respondent-Mother appeals a permanency planning order contending that the trial court erred by ordering her not to have visits with her child. Because the trial court's findings of fact regarding Mother's conduct fully support the restriction, we conclude the trial court did not abuse its discretion in ordering Mother to have no visits with her child.

## I. Background

On 24 April 2024, a juvenile petition was filed by the Onslow County Department of Social Services ("DSS") alleging that Jason,[1] then eight years old, was a dependent juvenile. The petition alleged that, on the prior day, Jason returned home from school by bus, and Mother was not there to meet him. They were living in a hotel, and the hotel management let Jason into their room, wherein Jason found his mother "drunk and stuck between the room's air conditioning unit and the wall."

Jason sought help from hotel management, and 911 was called. Mother was "impaired by alcohol and unable to provide care" for Jason. The petition reported that the mother "has substance abuse issues and untreated mental health" issues, and she "refuses to provide an appropriate alternative childcare arrangement." An order granting DSS nonsecure custody with full placement authority was entered.

Prior to an adjudication and disposition hearing on 9 July 2024, Mother stipulated that the above facts recited in the juvenile petition were true. A juvenile adjudication and disposition order was entered on 9 August 2024.

After a 4 September 2024 permanency planning hearing, the trial court entered an order on 23 September 2024. In its first permanency planning order, the trial court found that, since shortly after leaving detoxification treatment, Mother had resumed drinking. The social worker received concerning texts from Mother on

---

[1] We use a pseudonym to protect the identity of the minor child.

15 July 2024 and went to her hotel room. The social worker found Mother with a bottle of vodka on the floor. Mother stated that she would never go to treatment for alcohol, even if she would lose Jason as a result, and admitted she had stopped going to Alcoholics Anonymous meetings. She later reiterated that she would not get treatment for alcoholism, failed to complete any mental health treatments or assessments, and refused court-ordered drug screens. Due to her admission of continuous alcohol consumption, among other factors, Mother's visits with Jason were ordered to be supervised.

On 24 September 2024, a motion for review was filed to conduct a hearing on visitation. The motion alleged that, after the first permanency planning order allowed a minimum of two hours of supervised visitation per week, Mother began texting the social worker to threaten her life and to refuse supervision, and Mother stated that she and Jason would pray at visits for the social worker to die or disappear. As a result of Mother's behavior, an order was entered stopping visitation.

A permanency planning hearing was held on 17 January 2025, and an order was entered on 26 February 2025. In its second permanency planning order, the trial court found that, during visitation that was allowed on 23 December 2024, Mother was drunk and had refused drug screens and an order to wear a SCRAM bracelet for continuous alcohol monitoring. Mother was convicted of communicating threats to the social worker in November 2024. The order allowed supervised visitation of two hours per week, with DSS having discretion to expand that scope.

DSS moved for a six-month permanency planning hearing on 13 February 2025. The matter came on for hearing on 28 April 2025, and a continuance was granted on Mother's request due to a reported medical issue. The matter was continued to 29 May 2025.

A permanency planning hearing was held on 29 May 2025. The exhibits admitted at the hearing showed continuing and increasingly abusive emails from Mother to DSS. In the resulting permanency planning order, the trial court found that Mother was drunk during a supervised visit with Jason, had refused drug screens, had not complied with the order to wear a SCRAM bracelet, continued to refuse to do recommended inpatient substance abuse treatment, and had "continued to be belligerent with social workers [including] calling her social worker the devil and threatening to spit on her." The order did not alter the prior visitation conditions of supervised visits of a minimum of two hours per week. A subsequent permanency planning hearing was scheduled for 11 June 2025.

A permanency planning hearing was held on 11 June 2025, wherein a DSS report, additional emails between Mother and DSS, and a GAL report were admitted into evidence. The DSS report noted that the Mother's "living arrangements, substance use, and mental health have not improved in the 12 months that [Jason] has been in the care of the Department." The GAL report made similar observations. The emails from Mother continued to be belligerent and inappropriate.

The GAL report recommended adoption as the primary permanent plan for Jason, with custody with the foster parents as the secondary permanent plan. The GAL report also noted that Jason had expressed his wishes to be adopted multiple times, both privately and in front of his foster parents. The report notes that returning Jason to his mother "would put him back in an unstable life of chaos[,]" and that Mother has six other children over whom she does not have custody.

In its permanency planning order issued from the 11 June 2025 hearing, the trial court again found that Mother had not addressed her substance abuse issues. The trial court further found that Mother's prior interactions with DSS staff during prior visitations "are traumatic" to Jason, and "cause him to have negative behaviors after they occur due to the trauma of visitation and [M]other's lack of progress in addressing her substance use and mental health issues." The trial court found that Mother's interactions with DSS staff were "egregious" and were "evidence of her untreated mental health and substance use issues." The trial court found that Jason "should not be exposed to such behavior, and at this time visitation with [M]other is not in the juvenile's best interests and welfare." The permanency planning order concluded by relieving DSS of further reunification efforts, granting sole custody to the foster parents, not ordering any visitation rights to Mother, and transferring the matter into a civil custody action. Mother timely appealed.

## II.    Discussion

Mother's sole argument on appeal is that the trial court abused its discretion by ending her visitation with Jason.

### A.  Standard of Review

> This Court reviews disposition orders, including visitation determinations, for abuse of discretion. When reviewing for abuse of discretion, we defer to the trial court's judgment and overturn it only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. Further, appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law. Unchallenged findings of fact are binding on appeal. Whether the trial court's findings of fact support its conclusions of law is reviewable de novo. If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order.

*In re D.E.*, 298 N.C. App. 7, 10-11 (2025) (cleaned up).

### B.  Analysis

Under N.C. Gen. Stat. § 7B-905.1, an order "that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation." N.C. Gen. Stat. § 7B-905.1(a) (2025).

Here, the trial court made the following relevant findings of fact:

> 3. That the [c]ourt heard the sworn testimony of social worker Kajsa Williams and received into evidence the Court Report of the Onslow County Department of Social Services as Petitioner's Exhibit #1. . . .

4. That the [c]ourt also accepted into evidence through the testimony of social worker Williams email correspondence between [Mother] and social worker Williams as Petitioner's Exhibit #2.

5. That the [c]ourt also received into evidence a Court Report from the Guardian ad Litem for the juvenile[].

6. That the findings of fact from this [c]ourt's Adjudication Order in this matter are hereby incorporated as if fully enumerated herein.

7. That [Mother] was not present but was represented by counsel. No evidence was offered on her behalf for this [c]ourt's consideration at today's hearing.

. . . .

12. That [Mother] has not addressed her substance abuse issues. That [Mother's] interactions with the staff of the Department of Social Services during her prior visitations has a negative effect on the juvenile. That the juvenile acknowledges that these visitations are traumatic and cause him to have negative behaviors after they occur due to the trauma of visitation and [Mother's] lack of progress in addressing her substance use and mental health issues. That [Mother's] interactions and behavior towards social work staff and the Department are egregious and evidence of her untreated mental health and substance use issues. That the juvenile should not be exposed to such behavior, and at this time visitation with [Mother] is not in the juvenile's best interests and welfare.

13. That while the relationship between the juvenile and [Mother] is not healthy, there is a bond between [Mother] and the juvenile. That this bond does not outweigh the damage to the juvenile of visitation with [Mother] at this time.

14. That [Mother] has refused to address her substance use and mental health issues.

. . . .

17. That [Mother] [has] acted inconsistently with [her] constitutionally protected parental rights for the reasons

set forth herein and those contained in prior Orders of this [c]ourt.

18. That [Mother] is unfit for the reasons set forth herein and those contained in Prior Orders of this [c]ourt.

Mother does not challenge any of the trial court's findings of fact, and they are thus binding on appeal. *See In re D.E.*, 298 N.C. App. at 11. The uncontested findings detail Mother's continued substance abuse issues, abusive interactions with DSS staff at visitations which negatively affected Jason, Jason's acknowledged trauma as a result of visitation, and Mother's lack of progress in addressing her substance abuse and mental health issues. These findings amply support the trial court's conclusion that it was in Jason's best interest to end Mother's visitation. Mother's arguments and opinions to the contrary lack merit.

Based on the unchallenged findings of fact, we cannot say the trial court's decision to cease visits between Mother and Jason was "so arbitrary that it could not have been the result of a reasoned decision." *Id.* The trial court's order is affirmed.

AFFIRMED.

Judges STROUD and ARROWOOD concur.

Report per Rule 30(e).